CAVANAUGH *v*. AMERICAN OIL COMPANY

[No. 274, September Term, 1965.]

*Decided April 1, 1966.*

The cause was argued before HORNEY, MARBURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*James G. Beach, Jr.* and *Walter R. Tabler* for appellant.

*Paul F. Due,* with whom were *Richard C. Whiteford* and *Matthew J. Gallo* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

This appeal involves a claim for workmen's compensation benefits by Joseph Cavanaugh, appellant, against his employer, the self-insured American Oil Company, appellee. Cavanaugh's claim was disallowed by Commissioner Harold Lee Frankel in an order passed November 15, 1963, and the claimant appealed to the Superior Court of Baltimore City, where the case was tried before a jury, Judge Dulany Foster presiding. At the

trial's conclusion, the jury answered "No" to the question: "Did the Claimant sustain an accidental personal injury arising out of and in the course of his employment?" Having answered this question in the negative, the jury, in accordance with the instructions given by the trial judge, did not answer question number two pertaining to whether, *vel non,* the disability of the claimant was the result of such an accidental injury. On November 19, 1964, the judgment on the verdict was made absolute in favor of the employer and self-insurer and this appeal was thereafter filed, the appellant contending that the judgment should be reversed and the case remanded for a new trial because of the trial judge's failure to admit certain evidence, his failure to properly instruct the jury, as well as the "unduly restrictive" limitations imposed by the judge on claimant's counsel's closing argument to the jury.

At the trial, the appellant testified that in June of 1961 he was employed as a truck driver for the American Oil Company and that he was assigned a specific geographic area of metropolitan Baltimore over which he was in charge of gas-pump maintenance. On June 9, 1961, the date of the "accident", he serviced his truck and proceeded to his job assignment, going east on Eastern Avenue, at a time when the flow of traffic was heavy. Cavanaugh testified that he stopped for a red light at the intersection of Kane Street and Eastern Avenue and that when the light changed he attempted to make a left turn across the three lanes of west bound traffic on Eastern Avenue. While making the turn he lost his grip on the steering wheel and the truck veered toward utility poles located on the northeast corner of the intersection. He further testified that he grabbed for the steering wheel and caught it but the spinning momentum of the wheel pulled him forward to the edge of the seat and threw him to the left into the truck door. He testified that he exerted maximum effort to right the truck into its proper course on Kane Street so as to avoid the poles and the oncoming west bound traffic on Eastern Avenue. It was while gripping the wheel and straining to control the truck, that he experienced what he described as "an explosion" in the left side of his chest, which caused him considerable pain and numbness in the left side of his body. Cavanaugh successfully avoided striking any-

thing and once the truck was under control he reversed his direction and proceeded to his home, some eight blocks away. Upon arrival he collapsed on the living room floor. His wife summoned a doctor and the claimant was subsequently admitted to Maryland General Hospital, where the diagnosis was that he had suffered a myocardial infarction of the anterior wall of his heart.

While in the hospital, and after his release therefrom, the claimant received certain benefits from the American Oil Company's group insurance plan, to which he would not have been entitled if he had suffered an accidental injury. In order to get these benefits the claimant signed six written "Statement[s] of Claim", all of which contained a question as to whether an accident was involved and if so, requesting details. On all six of these statements the claimant left the question as to occurrence of an accident blank. James R. Murphy, employed as a "Relations Clerk" by the employer, testified that he had some ten conversations with the appellant concerning the processing of these group insurance benefits and that Cavanaugh never mentioned an "accident". On cross-examination, Cavanaugh admitted that the first time he ever described the "accident" in the way in which he described it in his testimony in the trial of this case, was in the hearing before the Workmen's Compensation Commission on February 14, 1963, and that this was the first time he ever mentioned it to anybody connected with American Oil Company.

Dr. Edward Leach, a heart specialist, produced on behalf of the appellee, testified that he felt that the "accident" as above described "doesn't seem to be an accident, and it, * * * occupied too brief a period of time to have any great bearing on the condition. I think he probably would have had the infarction at that time regardless of what he was doing", inasmuch as a person can have a myocardial infarction such as this claimant suffered while he is asleep in bed and that it occurs in this manner "probably just as often then as any other time." Dr. Joseph C. Matchar, who was called by the appellant, admitted on cross-examination that a heart attack of the kind appellant suffered could occur while sleeping or while sitting in a chair. He noted, however, that statistically one is more likely to have this type of myocardial infarction under stress than at rest.

On this appeal the appellant contends that the trial judge committed reversible error by his failure to allow the introduction into evidence of a letter written by the claimant and addressed to Chairman Doherty of the Workmen's Compensation Commission, dated November 11, 1963. He contends that the letter was relevant in order to show the jury that Commissioner Frankel was prejudiced against petitioner's claim when he decided the case, thereby helping the appellant to overcome the prima facie correctness of the Commission's decision. This letter was properly excluded, as it was irrelevant for two reasons. First, the letter itself was completely innocuous inasmuch as it merely politely asked Chairman Doherty to see that a decision be reached by Commissioner Frankel "very soon," and even if Frankel saw this letter before he rendered his decision he could not conceivably have been prejudiced thereby. Secondly, it is clear from an inter-office memorandum, which was also proffered by the appellant, that Chairman Doherty did not pass Cavanaugh's letter on to Frankel until four days after Frankel had mailed out the decision adverse to the claimant and he thus could not have been prejudiced by this letter which he had not received until after he had rendered his decision.

The claimant next contends that he should have been permitted to offer in evidence records of the Maryland General Hospital which would show that the claimant made an attempt at suicide on August 9, 1962, fourteen months after the "accident" involved in this case. At the trial it was suggested that these records were admissible to explain his failure to mention the accident on the insurance forms. The trial court, in sustaining the appellee's objection to the admission of the hospital records, correctly ruled that appellant "certainly hasn't testified this was any reason for his not having completed the insurance forms more in detail or having done them himself. He doesn't suggest that this is a reason for his mode of conduct." Furthermore, there was no other basis for the proposition that a person who would commit suicide would be more likely to fail to mention an accident than someone who had not made such an attempt, and the proposition is certainly not self-evident. Here the appellant suggests no other reason that the records were relevant, and given the long period of time which elapsed between the "accident" and the attempted suicide, we can think of none.

Appellant's exceptions to the trial judge's instructions are four in number. First, that he should have given the following instruction:

"That, 'the Workmen's Compensation Act was passed to promote the general welfare of the State and to prevent the State and its taxpayers from having to care for injured workmen and their dependents, when under the law as it previously existed, such workmen could not recover from their injuries', *Paul vs. The Glidden Co.,* (184 Md. 114 at 119) except under the law of negligence; and that '* * * the Workmen's Compensation Act should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes * * *' (*Bethlehem-Sparrows Point Shipyard, Inc., et al. vs. Hempfield, et al.,* 206 Md. 589)."

This instruction was properly refused because the first portion of it is merely historical and would in no wise aid the jury in answering the two factual questions presented to it, and the second portion was likewise irrelevant as it involves rules to be applied by the court in construing the statute, a task which the jury was not called upon to perform. The second alleged error in the court's instruction was the judge's failure to instruct the jury that: "your decision in this case affects *this case* only, and in no way changes the law of this State nor does it affect any other case before the Workmen's Compensation Commission or on appeal therefrom." Inasmuch as the jury had been instructed to answer two factual questions involving this particular claimant, it is difficult to see how the jury could have conceivably thought that their factual determination would affect the outcome of other cases. Moreover, such an instruction would very likely confuse a jury and would be objectionable as a veiled plea for sympathy for this particular claimant. Furthermore, even if the instruction were not objectionable, appellant does not suggest the particular manner in which he was prejudiced by the judge's failure to so instruct the jury.

Next the claimant asserts that he was entitled to have the phrase "preponderance of the evidence" as used in the court's

charge more fully explained to the jury. This assertion is without merit because our perusal of his charge shows that he fully and adequately explained this term to the jury. Finally, appellant complains that in concluding his charge to the jury the court instructed it that: "if the accidental injury of June 9th either accelerated or aggravated a pre-existing condition, the jury should answer the second issue 'yes' " and "that the Court should have added the phrase 'or if it caused the condition.' " The short answer to this contention is that the jury, having found by its answer to the first question that there was no accidental injury, was not required to answer question No. 2 dealing with the relationship between the accident and disability, and thus the failure to give this suggested instruction in regard to a question which was properly left unanswered, could not be prejudicial.

Appellant lastly maintains that the court erred by not allowing his counsel to read the preamble to the Workmen's Compensation Act to the jury in his closing argument. He asserts that the purpose of such a reading would be to show the social purposes and intent of the law under which it was called upon to render a decision. We find no error in the ruling.

For the reasons stated above the judgment will be affirmed.

*Judgment affirmed, costs to be paid
by appellant.*